THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE BUCKHANA *et al.*, Defendants-Appellants.

First District (1st Division)     No. 80-1133

Opinion filed August 31, 1981.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Paula Carstensen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Willie Buckhana and Tony McGhee (defendants) were convicted of burglary and armed robbery. Buckhana was sentenced to 7 years and 18 years respectively and McGhee was sentenced to 7 to 14 years, all concurrent. They appeal.

Defendants raise no issue on the strength of the evidence to prove their guilt beyond a reasonable doubt. A short factual summary is therefore sufficient.

The Moton family conducted a demolition business on the south side of Chicago. The family consisted of Sam, his wife Lenora, their daughter Rosie, then 17 years old, and a grandson 4 years old. On September 4, 1978, about 9 p.m. they were seated in a family lounge at the business. The front door was locked. An employee named Tobler knocked on a front window. The grandson unlocked the door. Tobler entered and at his request Sam called off their dog. Tobler opened the door and six armed men ran in.

Sam, Lenora and Rosie all identified defendants in court and at a lineup. The gunmen were seeking a large sum of money which was secreted in a barrel of peanuts. Defendant Buckhana beat Sam over the head with his pistol and took $160 from him. Buckhana later entered the office, took the family rifle and pistol and beat Sam over the head with the rifle. Defendant McGhee held his gun close to Lenora's face. Defendant Buckhana threatened Rosie if she refused to say where the money was. Defendant Buckhana then took Rosie into the office alone. Sam called out that the money was outside in his automobile under the spare tire. The six men left and drove the car away.

Fingerprint evidence showed fingerprints and a thumbprint of the defendant McGhee on the outside of the front door. Police subsequently located the automobile. A person named Brown found in the car by the police testified he entered the car with defendants and then fell asleep after they left.

Defendants both testified that on September 4, 1978, they went on a long bus trip to Buckhana's mother and remained there overnight. There was no other corroboration of this alibi. McGhee testified that about 5 p.m. on September 3, 1978, he went to the wrecking yard. McGhee testified he spoke to Tobler at that time about the possibility of employ-

ment. He may have leaned on the front door and he recalled touching the door. Rebuttal evidence by an expert established that fingerprints such as those on the front door would disappear within a few hours after being made. The strength and efficacy of fingerprint evidence has been commented upon by the supreme court. See *People v. Rhodes* (1981), 85 Ill. 2d 241, 251, 422 N.E.2d 605.

Our study of the record convinces us that the evidence of guilt of these defendants is overwhelming beyond any reasonable doubt.

Defendants contend prejudicial final argument by the State and improper contact between the jury and a deputy sheriff require reversal of the judgments.

I

Defendants assert error in three respects: statement by the prosecutor that defense counsel were "attempting to explain away" certain matters corroborating the identification; the prosecutor stated that either the Moton family was lying or the defendants were guilty and also the prosecutor said if the jury believed that the charges of the State were a "frame-up" they should sign a not-guilty verdict. We find no reversible error in the final arguments.

Examining the entire argument, we find the defense made six objections to the initial prosecution argument on closing of which three were overruled and three were sustained. The only point raised by the defense is directed to the fact that the trial judge overruled the objection about the defense allegedly attempting to explain away corroborating evidence. In the closing rebuttal argument by the State, seven objections were made by the defendants. Six of these objections were sustained. The only one overruled is not mentioned as error in defendants' brief.

We therefore conclude there was a failure by the defendants to object in two of the three instances discussed in their brief. Error, if any, resulting from these arguments, "is, therefore, deemed waived." *People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

In addition, none of the contentions now made by defendants concerning the final arguments, without exception, was ever raised in the written motions for new trial filed by defendants. It follows that all of these contentions are therefore waived. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358-59, 418 N.E.2d 739; *People v. Adkisson* (1980), 83 Ill. 2d 1, 7, 413 N.E.2d 1238 and cases there cited.) *Adkisson* comments on "[t]he salutary purpose of a firm waiver rule, as reiterated in the opinions of this court and of our appellate courts * * *." (83 Ill. 2d 1, 7.) Upon a slightly different aspect of the point, the fact that at least two of these defense

contentions were never raised in the trial court in any manner is another ground for waiver. *People v. Lykins* (1979), 77 Ill. 2d 35, 38, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602.

Additionally, the plain-error exception (Supreme Court Rule 615(a), 73 Ill. 2d R. 615(a)) should not be applied here. (*Jackson*, 84 Ill. 2d 350, 359-60.) The evidence of guilt is overwhelming. Under no circumstances can we say that the verdict in this case would have been otherwise if the arguments complained of had not been made. *Jackson*, 84 Ill. 2d 350, 360.

## II

The verdict of the jury was filed and judgment entered on July 17, 1979. On August 16, 1979, defendants filed separate motions for new trial. These motions were heard on September 17, 1979, at which time defendants filed the following affidavit by Jimmie Buckhana, brother of a defendant:

> "My name is Jimmie Buckhana and I live at 2114 W. 18th St. Chicago Illinois. I am the brother of Willie Buckhana one of the defendants in the above case. I attended every hearing of the trial of the case.
>
> On [the] 17th day of July I attended the final trial date and when the Jury went in to deliberate the case I remained in the Court Room from the time the Jury went in to the time they came out with the exception of going to the bathroom a couple of times.
>
> About 7:45 P.M. one of the lady sheriffs came out and spoke to the Clerk. She said [']I had told the Jury if they don't reach a verdict in 20 minutes we would have to lock them up for the night because of having to make hotel reservations.[']
>
> She was repeating to the clerk what I had heard her do and say to the Jury. I had heard her knock on the door and tell the jury that if they don't reach a verdict in 20 minutes they would have to be locked up for the night. I heard one woman say that she can't stay overnight. I waited in the Court Room and the Jury came out about 8 P.M. with their verdict."

Defendant urges reversible prejudice resulting from the facts set forth in the above affidavit. Counsel for both sides have cited quite a number of cases. After examination of these authorities we believe the proper answer to this legal problem appears from the decisions summarized as follows:

■■ In *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697, a bailiff came to the door of the jury room in response to a buzzer ring. Someone inside the door said either "We want further instructions" or "We want to ask a question." The bailiff responded either "You are not entitled to more instructions" or "You can't ask any questions." These facts appear from an

affidavit by defendant's counsel. (40 Ill. 2d 4, 13.) The trial judge stated he was absent at the time but he had informed counsel of this and told them another specified judge in the building could be called if any question arose. The supreme court rejected the defense argument. Citing a number of authorities, the court held (*Mills*, 40 Ill. 2d 4, 14):

> "In our State the rule has judicially evolved that a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a communication to the jury either by the court or by third persons outside the presence of the defendant. [Citations.]"

In *Parker v. Gladden* (1966), 385 U.S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468, cited in *Mills*, a juror was told by the bailiff with reference to the defendant, "Oh, that wicked fellow, he is guilty." (385 U.S. 363, 363, 17 L. Ed. 2d 420, 422, 87 S. Ct. 468, 470.) The bailiff also told another juror "If there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it." (385 U.S. 363, 364, 17 L. Ed. 2d 420, 422, 87 S. Ct. 468, 470.) The Supreme Court described this unauthorized conduct by the officer as involving " '* * * such a probability that prejudice will result that it is deemed inherently lacking in due process.' " *Parker*, 385 U.S. 363, 365, 17 L. Ed. 2d 420, 423, 87 S. Ct. 468, 471, quoting *Estes v. Texas* (1965), 381 U.S. 532, 542-43, 14 L. Ed. 2d 543, 549-50, 85 S. Ct. 1628, 1633.

In *People v. Tobe* (1971), 49 Ill. 2d 538, 276 N.E.2d 294, defendant's post-trial motion was supported by an affidavit of an attorney which stated the jury had made three inquiries during its deliberation. The chief bailiff testified he recalled but one communication from the jury. The trial judge noted he was aware of only one such communication from the jury. The motion for a new trial was denied. Defendant made a motion for rehearing supported by affidavits from three bailiffs and seven jurors. This disclosed three or four instances in which jurors communicated with the bailiffs and were told deliberation should continue until a verdict. The motion for new trial was denied. The Supreme Court of Illinois affirmed this result. The court cited a number of authorities and also quoted with approval the above-quoted statement from *Mills*, 40 Ill. 2d 4, 14. See *Tobe*, 49 Ill. 2d 538, 542.

A petition for habeas corpus was filed in the United States District Court for the Northern District of Illinois by defendant Melvin Tobe. That court granted the petition. (*United States ex rel. Tobe v. Bensinger* (N.D. Ill. 1972), 352 F. Supp. 218.) In the United States Court of Appeals for the Seventh Circuit, the decision of the district court was affirmed. (*United States ex rel. Tobe v. Bensinger* (7th Cir. 1974), 492 F.2d 232.) However, upon examination of the decisions of the Supreme Court of Illinois and the United States Court of Appeals, we find no conflict of law. The court of appeals specifically held that verdicts will not be set aside because of a communication between the jury and a third person "where it is apparent that no prejudice has resulted." (492 F.2d 232, 237.) The

court of appeals also quoted from *Parker*, 385 U.S. 363, 364, 17 L. Ed. 2d 420, 422, 87 S. Ct. 468, 470, and *Tobe*, 49 Ill. 2d 538, 542, to the effect that the test is whether the record shows such a probability that prejudice to the defendant has resulted so that the conviction is inherently lacking in due process. Thus, the difference between the two courts is simply one of factual classification.

It remains for us carefully to examine the above affidavit in the light of the record before us and then to classify the instant case in accordance with propriety and justice. In accomplishing this, we are impressed, and we agree, with the analysis expressed by the learned and able trial judge after he had heard arguments of counsel and carefully studied the affidavit. The trial judge noted that the affidavit describes two conversations. The trial judge also noted the apparent bias of the maker of the affidavit. The trial court could not understand how the affiant could have heard the purported conversation between the clerk and the bailiff if it took place in the courtroom. The second conversation apparently took place at the door to the jury room. The trial court found it difficult to believe that any person on the outside would have heard statements made by a woman juror inside the jury room.

The trial court also pointed out that if such a conversation had occurred, it took place after the jury had deliberated 8 hours. The court also correctly stressed the fact that there was no evidence that any juror was pressured or coerced. Of additional importance is the comment of the trial judge that the conversation, if it actually occurred, apparently was directed to the practical problem of the possible need of putting the jury up in hotel rooms and of making certain that proper accommodations could be obtained. The trial court added that if any such problem had arisen, it undoubtedly would have been brought to the attention of the court and this did not occur.

■■ Our consideration of this affidavit and of the arguments made in the defendants' brief lead us inevitably to the conclusion that the trial judge was eminently correct in his analysis. The trial judge was undoubtedly better equipped than any other person to determine the central issue as to whether any prejudice resulted to defendants from the subject matter of the affidavit. Actually, we have here a situation in which an attempt is being made to raise a claim of prejudice on a foundation of "mere conjecture." See *People v. Lewis* (1975), 60 Ill. 2d 152, 158, 330 N.E.2d 857.

For these reasons the judgments appealed from are affirmed.

Judgments affirmed.

McGLOON and O'CONNOR, JJ., concur.