(Nos. 43140, 43902 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MELVIN TOBE, Appellant.

*Opinion filed November 24, 1971.*

JAMES R. BRONNER, of Chicago, appointed by the court, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (JAMES B. ZAGEL, Assistant Attorney General; ROBERT A. NOVELLE and THEMIS N. KARNEZIS, Assistant State's Attorneys; of counsel,) for the People.

MR. JUSTICE WARD delivered the opinion of the court:

The defendant, Melvin Tobe, who was indicted for the murder of Robert Lee Jackson, was found guilty of voluntary manslaughter on February 27, 1970, in the circuit court of Cook County. He was sentenced to not less than 9 nor more than 18 years in the State penitentiary. On this appeal he contends: (1) the trial court failed to conduct a meaningful hearing to determine whether the bailiffs prejudicially influenced the jurors so as to violate the defendant's right to an impartial jury; (2) bailiffs did in fact prejudicially influence the jury and thereby violated his right to an impartial jury; (3) the court erred in permitting the State to amend a bill of particulars after eight jurors had been accepted, thereby precluding the defense from exercising peremptory challenges as to the jury members already accepted; (4) the State improperly referred to a suggested extra-indictment offense, thereby prejudicing the jury; (5) the sentence was excessive. While the appeal from the conviction was pending, the defendant filed a petition for a post-conviction hearing, which was dismissed without a hearing. The defendant also appealed from that dismissal, saying that the court erred in holding that the petition could not be entertained while an appeal from the conviction was pending. We have consolidated the two appeals. The post-conviction petition alleged that the defendant had been denied an impartial jury through

540

(1) the bailiffs' conduct; (2) the State's references to an extra-indictment offense; (3) the State's improper and unsupported suggestion that the defendant had lied in his testimony.

The State's evidence, which included the testimony of two eyewitnesses, was that early in the morning of October 25, 1969, the defendant parked his auto near 2215 West Madison Street in Chicago, a short distance behind an auto occupied by the victim, Robert Lee Jackson. The defendant got out of his car, walked to the right rear door of the auto in which Jackson was seated and motioned to him to come out. When Jackson stepped from the auto, the defendant drew a gun and shot at Jackson but missed him. He fired again at Jackson, who had fallen to the sidewalk, returned to his auto and drove away. Jackson was pronounced dead at Cook County Hospital from a bullet wound in the back of the neck.

The defendant, who was the only occurrence witness for the defense, testified that during the early morning hours of October 25, 1969, he and his wife were driving his mother-in-law and a friend home when he observed Jackson in an auto. He had heard that Jackson had made a statement that the defendant had shot one Otis Walker and he intended to question him about it. Jackson stepped from the auto when the defendant tapped on the window and he noticed that Jackson was carrying something in his hand. Jackson asked if the defendant came to shoot him, too, and then struck the defendant in the head with a gun. The weapon was discharged, and the two men scuffled. The defendant's next recollection was that Jackson was lying on the sidewalk and he, the defendant, had the weapon in his hand. He returned to his car, he testified, drove his mother-in-law and her friend home, and then proceeded to St. Louis. When driving to St. Louis he threw the weapon from the car. On October 27th the defendant phoned the Chicago Police Department to say he was

returning to Chicago. He did return to Chicago on October 29 and turned himself over to the authorities on October 30.

The defendant's trial was begun on February 19, 1970, and concluded on February 27. Five days were spent in the presentation of evidence. Including time for dinner, the jurors deliberated slightly less than seven hours before returning their verdict. The jurors were polled and affirmed the verdict.

The defendant filed post-trial motions, including a motion for a new trial and a motion styled "for a hearing on inquiries made by the jury in the course of their deliberations." This latter motion was supported by an affidavit of one of the defendant's attorneys to the effect that he had learned from jurors that three inquiries had been made by the jury during its deliberation and that defense counsel had been unaware of this. In considering this motion the court called Thomas Goe, who had been the chief bailiff at the trial. Goe testified that he recalled one communication from the jury, stating they could not reach a verdict. He had informed the trial judge and had been instructed to tell the jury that it should continue to deliberate. The judge said in the course of this proceeding that this was the only communication of which he was aware. Treating the motion for a hearing as part of the motion for a new trial, the court denied the motion for a new trial. The defendant later submitted a motion to reconsider the motion for a hearing "on the inquiries" and presented affidavits taken from three bailiffs and seven of the jurors. It appears from the affidavits of the bailiffs that there had been two or three inquiries from the jury, which apparently concerned what would occur if the jury could not reach a verdict. The bailiffs' responses had been that the jury should continue to deliberate until a unanimous decision was reached. According to the affidavits of the jurors there had been three or four instances in which they

had asked these questions of the bailiffs and the jurors were told they should continue deliberating until they reached a verdict. One juror said that because she had been told the jury had to reach a verdict she signed a verdict in which she didn't believe. Another juror said that the statement that the jury had to reach a verdict didn't affect his decision, but the affiant said he knew it influenced others to reach the verdict. The court granted the motion to reconsider the motion for a hearing on the inquiries. It conducted the hearing on the question and considered it as part of the defendant's motion for a new trial. The motion for a new trial was again denied.

We shall consider in combination the first two arguments of the defendant. There is an overlapping in the presentation, and, also, common subsidiary points appear in the course of both of the arguments.

We consider the charge that the trial court failed to give the defendant a "meaningful" hearing to determine whether the bailiffs prejudiced the defendant's right to a fair and impartial jury is not well founded. If the hearing was less than meaningful in any form, it would appear from the record that it was hardly attributable to the conduct of the trial court. There is no showing that the defendant was denied the opportunity to offer witnesses or other evidence for the court's consideration or that in any way he was restricted in arguing the motion.

The trial court correctly was of the view that two established precepts were to be considered in passing on the motion for a new trial. One was described in *People v. Mills, 40 Ill.2d 4, 14,* where we said: "In our State the rule has judicially evolved that a jury verdict will not be set aside where it is apparent that no injury or prejudice resulted from a communication to the jury either by the court or by third persons outside the presence of the defendant. *(People v. Berry, 18 Ill.2d 453, 459; People v. Tilley, 411 Ill. 473, 478; People v. Brothers, 347 Ill. 530,*

*548; Emme v. Pennsylvania Railroad Co., 29 Ill.App.2d 97.)*" The other rule invoked by the court was the familiar one that jurors will not be permitted to impeach their verdict. Applicable here was this court's expression in *People v. Pulaski, 15 Ill.2d 291, 300:* "It is the general rule that courts will not receive the affidavits or testimony of jurors who rendered a verdict, for the purpose of impeaching such verdict." Referring to the latter rule the trial court correctly refused to consider those portions of the two jurors' affidavits which were impeaching. Parenthetically, the defendant's brief says that the trial court, when denying the motion for the new trial for the first time, indicated that it had not considered all parts of all of the affidavits presented. The record, however, shows that at an earlier time counsel for the defendant stated that the trial court could disregard the impeaching portions of the affidavits.

The trial court did not err in not setting aside the verdict because the defendant was not present at the time of the communication, as the defendant says was necessary. As was stated in *Mills,* if there was a communication to the jury by the court outside the presence of the defendant and it is apparent that no prejudice resulted, the verdict will not be set aside. We do not judge that the communication between the jurors and the bailiffs was coercive and prejudicial as the defendant claims. Considering the length of the trial and the time the jury spent in deliberating, we do not believe it can be reasonably said that the statements of the bailiffs that the jurors should continue to deliberate until they reached a verdict can be regarded as coercive.

We consider that the case authorities offered by the defendant are clearly distinguishable. For example, in *Parker v. Gladden, 385 U.S. 363, 17 L.Ed.2d 420, 87 S.Ct. 468,* the bailiff had communicated to jurors that the defendant was "a wicked fellow" and guilty and that "if

there is anything wrong the supreme court will correct it." As we said in *People v. Mills, 40 Ill.2d 4, 14:* "The recent Supreme Court decision of *Parker v. Gladden, 383 U.S. 363, 17 L.Ed.2d 420, 87 S.Ct. 468,* does not in any way diminish the need for showing that the rights of the defendant were prejudiced by the acts of the bailiff." We cannot find that here the bailiffs' conduct involved "such a probability that prejudice will result that it is [to be] deemed inherently lacking in due process." *Estes v. State of Texas, 381 U.S. 532, 542-543, 14 L.Ed.2d 543, 85 S.Ct. 1628, 1633.*

The next contention is that the defendant was denied the effective exercise of his peremptory challenges, as the court allowed the amendment of the bill of particulars to show the commission of the crime at 2:00 A.M. and not 2:00 P.M. as the original bill of particulars stated. The amendment was made after 8 jurors had been accepted, and the defendant claims he was thus unable to question those jurors on their attitudes concerning self-defense, attitudes which might have caused him to excuse some or all of them by peremptory challenges. The defendant states he intended to rely on the defense of alibi and did not choose to question prospective jurors relative to self-defense until the amendment was filed.

We do not find the argument convincing. The same counsel who represented the defendant at trial had represented him at the coroner's inquest into the death of Jackson. There they had heard witnesses testify as to the time of the crime. They had a copy of the protocol of the inquest. The correction of the error could not have surprised. The defense may have been tactically frustrated, but it was not misled as to the time of the crime's commission. We do not find any interference with the exercise of peremptory challenges and we judge the trial court did not abuse discretion in permitting correction of the bill of particulars.

There is an unusual background to the defendant's argument that reference to Otis Walker and Walker's testimony was so prejudicial that it deprived him of a fair trial.

In his direct examination the defendant testified that he had been looking for Jackson to ask whether Jackson had said the defendant had shot a man named "Otis." When he confronted Jackson, he did not have any weapon, he said. On cross-examination he was asked whether he had ever carried a gun and he declared that he had not. Later, a defense reputation witness testified to the defendant's good reputation for "peacefulness" in the community. The witness was asked in cross-examination whether he had ever spoken to Otis Walker about the defendant's peacefulness and he replied that he did not know Walker. There was a defense objection and request that the testimony be stricken. The objections were overruled. Otis Walker appeared as a witness to rebut the defendant's testimony that he had never carried a gun. After stating that the defendant was in possession of a weapon on October 23, 1969, the witness was asked "What kind of weapon did you see in his hand"? He responded, "I don't know what kind it was, but the kind I got shot with was a .22." The defendant's objection was sustained and at his motion the jury was instructed to disregard the answer. In final argument the prosecutor noted that Walker testified, contrary to the defendant's testimony, that the defendant did have a gun two nights before the slaying of Jackson.

We do not judge that there was prejudicial error in what we have just described, especially when one considers the framework in which the references to Walker and Walker's unresponsive utterance as to having been shot appear.

That Jackson allegedly stated that the defendant shot Walker was admitted by the defendant to have

provoked the confrontation with the victim. Typically an accused seeks to exclude any reference to criminal conduct for which he is not .on trial. Here, the defendant himself offered the reference to explain his conduct when he encountered Jackson. According to his testimony it was the cause of the fatal incident. In closing argument the defense emphasized that the defendant had brought out in testifying that the victim had stated that the defendant had shot Walker. The unresponsive observation by Walker that "I got shot with *** a 22" was, of course, improper. The defendant asked the court to instruct the jury to disregard the comment and the court complied. The defendant complains that the prosecution cleverly but prejudicially dangled the name of Otis Walker before the jury during the trial and in final argument. It is true that the Walker incident regrettably became involved in the trial proceeding but, as stated, the incident was inherent in the case. Considering the entire record in this case we do not find reversible error.

Referring to the testimony of reputation witnesses for the defendant and the goal of ·rehabilitating offenders, the defendant contends that the sentence of not less than 9 years and not more than 18 years he received is excessive. This court has observed that typically the trial judge through his observation of the trial and the hearing in aggravation and mitigation is in a superior position to decide the question of punishment. *(People v. Taylor, 33 Ill.2d 417, 424.)* Here, two eyewitnesses testified to the defendant's deliberate killing of Jackson and we cannot say, considering the entire record, that the sentence imposed was inappropriate.

It will not be necessary to consider the defendant's argument that the trial court erroneously dismissed his post-conviction petition. This is so whether we adopt the defendant's view that the trial court dismissed the petition because the defendant's appeal was then pending, or the

People's view that it was dismissed because the court found it did not present a substantial constitutional question. Two of the three contentions made in the post-conviction petition had been raised in the defendant's appeal from his conviction. The appeals were consolidated and the questions of error common to each appeal have been considered and decided at this time. The third point in the petition was that the State failed to "tie up the inference that the defendant had lied on cross-examination." This charge stems from the circumstance that on cross-examination the defendant, who had testified on direct examination that he had phoned the Chicago police from St. Louis, was asked whether in fact he had phoned from Chicago. The judge had instructed the jury to disregard the question of the cross-examiner and the answer given. This third point did not raise a substantial constitutional question and the propriety of its dismissal cannot be questioned. The controlling question before a reviewing court is the correctness of the trial court's conclusion, not the validity of its rationale. *People v. York, 29 Ill.2d 68, 71.*

For the reasons given, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*