499 So.2d 721 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Curtis R. JAMES, Defendant-Appellant.
No. CR86-459.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1986.
Rehearing Denied January 16, 1987.
*722 Elvin C. Fontenot, Jr., Leesville, for defendant-appellant.
Asa A. Skinner, Asst. Dist. Atty., Leesville, for plaintiff-appellee.
*723 Before GUIDRY, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Curtis R. James was found guilty of second degree murder, a violation of La.R.S. 14:30.1, and sentenced as required by the statute to life imprisonment at hard labor without benefit of parole. He appeals the conviction based on six assignments of error. We affirm.

FACTS
A jury found that the defendant, the 61-year-old son of Ida Hext, shot and killed his 80-year-old mother on the front porch of their home in Leesville, Louisiana, during the evening hours of September 10, 1985.
There were no witnesses to the killing. It happened around 8:00 o'clock P.M. when shots were heard by neighbors. Defendant showed up at midnight at "The Country Store" near his home and asked the store clerk to call the funeral home and the insurance company, explaining that his mother was dead, that she had shot herself. Defendant was drunk. The store clerk called the police. When they arrived, defendant switched stories. He said he had come home from work at 11:00 and found that his mother had apparently fallen on the porch and that he had gone to the store to get help to pick her up. Defendant's conduct and changing stories quickly focused suspicion upon him. A .32 caliber revolver was found on the roadside between his house and the store. Defendant had traveled that road after his mother's death. Expert ballistics testimony matched one of the bullets that entered deceased's body with that revolver. The purchase of that weapon was documented two years earlier at a local pawn shop; it was defendant's gun. Three months before the killing a deputy sheriff had answered a disturbance call at the house where defendant and his mother lived alone, and found defendant in possession of a loaded revolver that appeared to be the same as the murder weapon. Footprints found near the gun on the side of the road matched the boots defendant was wearing when he was arrested. An empty holster and a box for .32 caliber ammunition were found on a piece of furniture in defendant's bedroom. Defendant had a history of excessive drinking. The deceased had also been drinking that night, as a blood sample for alcohol taken from her body reflected .13 percent.

ASSIGNMENT OF ERROR NO. 1
At his arraignment defendant elected to exercise his constitutional right to be tried by a jury. The trial date was set for January 13, 1986, and a jury was convened. On the day of trial, after the court had questioned the prospective jurors as to their general qualifications, defendant moved for permission to waive a jury trial and be tried by the judge alone. The court denied the motion. Defendant raises this as his first assignment of error.
A defendant has a right to waive trial by jury. La.C.Cr.P. art. 780. The waiver is to be entered at arraignment; however, the judge may accept a waiver of jury trial at any time prior to the commencement of trial. Comments, La.C.Cr.P. art. 780. The right to waive a trial by jury must be exercised in accordance with the time limitations provided by C.Cr.P. art. 521, or within 15 days from arraignment. C.Cr.P. art. 780(B). Article 521 gives the court authority to extend that time for good cause.
The defendant, recognizing that the decision of whether to permit a waiver of jury on the day of trial is normally within the discretion of the court, argues that the court abused its discretion in denying his motion. However, neither the record nor the defendant's brief on appeal suggest that the defendant offered any explanation or reasons to the court why he wanted to waive a jury trial. Since the defendant never offered any explanation for why he wanted to waive a jury trial, the trial court's function was not discretionary; the court had simply to apply C.Cr.P. art. 521 and find the motion untimely. There is no discretionary decision for this court to review. This assignment of error is without merit.

*724 ASSIGNMENT OF ERROR NO. 2
This assignment attacks the trial court's rulings denying the defendant's challenges for cause with respect to two jurors.
The prospective juror Rowzee ran the drug abuse program for this judicial district, was generally opposed to drinking, knew the defendant all of his life, and knew about his drinking habits. The defendant challenged him for cause under La.C.Cr.P. art. 797(3) which reads:
"The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
"(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;"
The prospective juror Dorothy Williams had known the defendant and his mother for 30 years and knew that defendant was a drinking man, and she was opposed to drinking.
Both these prospective jurors told the court that while they were personally opposed to drinking, they would not let that interfere with their decision in the case.
The trial court is vested with broad discretion in ruling on challenges for cause and such ruling will not be disturbed on appeal absent a showing of an abuse of discretion. State v. Benoit, 440 So.2d 129 (La.1983).
The fact that these jurors had knowledge that the defendant drank and had set opinions against alcohol, does not necessarily exclude them under La.C.Cr.P. art. 797(3). State v. Eastin, 419 So.2d 933 (La.1982). Both these jurors told the court that they would not let these factors affect their ability to decide the case on the law.
That Rowzee was employed by or paid by the state, or the court, did not disqualify him. State v. Straughter, 406 So.2d 221 (La.1981); State v. Smith, 437 So.2d 802 (La.1983).
We find no abuse of discretion in the denial of defendant's challenges for cause with respect to these two prospective jurors.

ASSIGNMENT OF ERROR NO. 3
The state successfully challenged for cause the jurors David Ezell and Lilly Kaliska. The defendant objected and now assigns error. Because the state used twelve peremptory challenges, the effect of an erroneous allowance of a state challenge for cause would have been to give the state more peremptory challenges than the law allows. La.C.Cr.P. art. 799, 800; State v. Wilson, 467 So.2d 503 (La.1985), U.S. cert. denied, ___ U.S. ___, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). As with Assignment of Error No. 2, La.C.Cr.P. art. 797 is the applicable law under this assignment and we will evaluate these facts in light of the pertinent language of Article 797 as set out in the previous assignment.
Ezell's responses indicated that he was something of a drinking buddy with defendant, and he candidly declared that he did not feel he could be a fair juror under the circumstances. The court felt also that his responses showed he would require proof beyond all possible doubt, rather than beyond all reasonable doubt.
The questioning of Lilly Kaliska revealed that she had discussed the facts of the case approximately 12 to 16 times with her daughter, who had been subpoenaed as a witness for the defendant. This prospective juror knew the defendant, and her daughter knew him even better. Mrs. Kaliska and her daughter discussed the defendant's guilt and Mrs. Kaliska admitted having formed the opinion that the defendant was not guilty. Mrs. Kaliska also said that she did not feel comfortable sitting as a juror in the case since her daughter was a subpoenaed witness in the case.
The trial court granted the state's challenges for cause as to both these prospective jurors. We have studied the examinations *725 of these two jurors and find no error in their exclusion on the state's challenges.

ASSIGNMENT OF ERROR NO. 4:
By this assignment the defendant contends that the trial court erred in allowing Detective Larry Smith to testify about a black holster and cartridge box found in defendant's bedroom after that evidence was ruled suppressed.
At a pretrial hearing on a motion to suppress this evidence, the trial court ruled:
"... I'm going to consider these somewhat in reverse order, certainly the matter of the holster and the cartridges that were taken from inside the house may be distinguished from some of the other items with which we are dealing here. They were taken four, four and a half or more hours, maybe five hours after police arrived on the scene, after the body had been removed, after the premises had been searched for other victims, after the premises had been searched for a perpetrator, and, after the premises had been locked, and they were returned and taken without the benefit of a search warrant and without the benefit of a consent, they should be suppressed and the court would order them suppressed."
The relevant facts are as follows. Detective Smith arrived on the scene at 12:55 on September 11, 1985. He checked the victim and then entered the house to check for other victims, or perpetrators. While going through the house Detective Smith saw a black holster and cartridge box in the second bedroom. Several hours later the holster and the cartridges were seized without a warrant.
During trial the prosecution, through Detective Smith, sought to introduce testimony concerning the presence of the holster and the cartridges seen by the officer in the defendant's bedroom soon after his arrival at the scene. The defense objected, and the prosecution argued that the account of the visual search of the bedroom was admissible. The trial court allowed Detective Smith to testify.
In State v. DeHart, 445 So.2d 419 (La. 1984) the Supreme Court reversed a conviction for distribution of marijuana. The trial judge, believing that the suppression of physical evidence did not prevent testimony about the evidence, had allowed the prosecution to refer to the suppressed evidence. The Supreme Court found that the testimonial evidence and the tangible evidence had the same source, and the suppression of one necessarily required the suppression of the other. Apparently, the physical and verbal evidence was acquired at the same time by means of the same illegal activity. The court recognized the rule that evidence which would otherwise be suppressible has been allowed when it had an independent basis, an exception applying when there is an independent source for the evidence, which antedates the illegality causing the suppression. In an earlier decision, State v. Marshall, 359 So.2d 78 (La.1978), the Supreme Court said that it is permissible to allow testimony concerning tangible evidence that has been suppressed, if that testimony is of facts which were learned by the witness at a time and place unrelated to the illegality which caused the suppression. The court said:
"... It is one thing to say that the State cannot make affirmative use of the objects unlawfully obtained. It is another to say that the State cannot use information obtained by witnesses at a time and place entirely unrelated to the unlawful search and seizure, when the information is not come by as a result of the unlawful search and seizure."
In the present case the holster and cartridge box were observed in open view by the detective making a security inspection of the house immediately upon his arrival. The objects themselves were not seized until some four hours later. Because they were seized without a warrant, they were properly suppressed. But their observation by another officer some four hours before the illegal search and seizure which resulted in their suppression, was admissible testimony.
*726 The reference to the holster and cartridge box, even if error, was harmless. The state had already introduced solid evidence establishing that the revolver found on the roadside was the murder weapon, that the weapon belonged to the defendant, that the gun was found along the road leading from defendant's house to The Country Store, that the defendant had recently traveled that route on foot, and that tracks in the sand beside the gun matched his boot prints. Evidence of the holster and cartridges found in his bedroom, even if improperly admitted, amounted only to harmless error. La.C.Cr.P. art. 921.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5:
By this assignment of error the defendant contends that the trial court erroneously denied his motion for a new trial. Defendant makes three arguments.
First he argues that one of the jurors who voted for conviction as charged, Billy Jack Beasley, had made statements, before being accepted on the jury, to another juror, Katy Jo Labby, indicating that he believed the defendant guilty. Defendant argues that Beasley lied on voir dire and questioned whether Beasley accepted the law as to the prosecution having the burden of proof.
The Jury Shield Law, La.R.S. 15:470, declares, among other things, that no juror is competent to testify to his own or his fellows' misconduct or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member. The jury privilege established by this statute is not absolute, however, and must yield to a substantial showing that the defendant was deprived of a constitutional right. State v. Graham, 422 So.2d 123 (La.1982), appeal dismissed 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983). Because of this, the trial court heard the testimony of Katy Jo Labby at the motion for a new trial. She testified that Beasley remarked to her, before either one was selected for voir dire, that the defendant was guilty, that he had read it in the newspaper, and that it would "take a hell of a lot" to change his mind about that.
The trial judge overruled the motion for a new trial, finding that the defendant had not shown substantial prejudice.
The voir dire of Beasley contains the following questions and answers while he was being examined by counsel for the defendant:
Q. Do you have an opinion or have you formed an opinion as to whetheras to the guilt or innocence of Mr. James in this case?
A. Well, what I read in the paper, you know, I formed an opinion, I guess you would say, in the back of my head, you know, just ...
Q. Well, based on what you read in the paper, do you have an opinion concerning whether or not he is guilty or innocent of the crime?
A. Well, just from what I read in the paper, yes, I mean it's just ...
Q. Now, you have been here for about two days now, and you have heard me ask this question over and over about this presumption of innocence and the reason I keep asking that over and over, is because it's very, very important that any person, be it you, me, Mr. James or anyone who gets accused of an offense be accorded that presumption. Because when we don't have that anymore then we cease to have a civilized government. Now, even though you have this opinion, Mr. James is presumed to be innocent. That means the fact that he has been arrested by the Vernon Parish Sheriff's Department, the fact that he has been charged with an offense is not any evidence that he is guilty of that offense?
A. I realize that.
Q. Do you agree with that?
A. Yeah.
Q. And, due to the fact that Mr. James is presumed to be innocent, the State *727 has the burden of going forward and proving this offense beyond reasonable doubt. Mr. James doesn't have to prove his innocence. The State has to prove his guilt, do you agree with that?
A. Yes sir.
Q. All right. And, can you assure me and Mr. Skinner that you will look at the evidence and you will abide by the principles that I asked you about when you reach your decision in this case?
A. Yes.
Immediately after these responses both the state and the defendant accepted Beasley as a juror. In its ruling denying the motion for a new trial, the trial court discussed the above quoted passage of the voir dire.
La.C.Cr.P. art. 797(2) reads in part:
"An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;"
In the present case the juror first indicated he had an opinion based on what he had read in the paper, but then he declared and the court was satisfied that he could render an impartial verdict based on the law and the evidence. The defendant was also apparently satisfied, because the defendant accepted this juror after eliciting those responses.
This ruling by the trial court was proper.
The defendant also complained at the motion for a new trial that at least two jurors during deliberations expressed the desire to reach a verdict by 5:00 o'clock, as they had social engagements. We discount this contention as there is no way it could be established that those comments, even if made, could or did affect the verdict.
Similarly, complaint is made that an unfair time constraint was put on the jury when it was told by the deputy sheriff attending it, in response to a question asked by a juror, that if a decision could not be reached that night they would have to spend the night. If this conversation took place as alleged, it was not improper; the question and answer did not have anything to do with the case, the response by the deputy was accurate, and the jury members were entitled to know, if they wanted to know, what would happen if they could not reach a verdict that night.
The motion for a new trial was properly denied.

ASSIGNMENT OF ERROR NO. 6:
This assignment presents a sufficiency of evidence claim. Defendant argues that there is no direct evidence that he killed the victim and that the circumstantial evidence does not exclude every other reasonable hypothesis as required under La.R.S. 15:438. Defendant states that the prosecution failed to show that the weapon found was the murder weapon, that the defendant fired the weapon, or that the victim died from the bullet wounds from the weapon.
The standard of review for the sufficiency of evidence in a case involving circumstantial evidence is stated by our supreme court in State v. Nealy, 450 So.2d 634 (La.1984) as follows:
"The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, *728 445 So.2d 1198 (La., 1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Sutton, 436 So.2d 471 (La.1983). The statutory rule provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus, although the circumstantial evidence rule (La.R.S. 15:438) may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Wright, supra; State v. Sutton, supra; State v. Chism, 436 So.2d 464 (La.1983)."
In our case the prosecution proved that the defendant picked out a .32 caliber revolver that he wanted to buy at Lee's Pawn Shop in Leesville. Apparently unable to purchase the gun himself because of prior felony convictions, defendant got a friend, Curtis Brown, to buy the gun for him. The owner of Lee's Pawn Shop testified that he sold the gun to Curtis Brown, and Curtis Brown testified that he gave the gun to defendant, as requested, and that defendant paid for it.
A forensic pathologist, the coroner of Caddo Parish, testified that he did the autopsy and that two gunshot wounds, one in the chest and one in the stomach, were inflicted on the deceased. The bullet in the chest was extracted by the doctor during the autopsy. Ballistics experts were unable to match that bullet with that gun. However, a second bullet was found on the floor near the body of the deceased on the night she was killed. This bullet was matched with that gun. The pathologist traced the route of the projectile that entered deceased's abdomen, and testified, based upon the nature of the exit wound, that it probably came from a .32 caliber. Either gunshot wound could have caused the death of the deceased. There was a large amount of blood beneath the victim's body where she was found on the porch. The gun that inflicted the chest wound caused extensive hemorrhage, and it was found over 100 yards from the body.
Defendant suggested a hypothesis of suicide. The jury rejected this hypothesis, as the gun which inflicted one bloody wound was found more than a hundred yards from the house and the deceased still lay in a pool of blood caused by the gunshots.
On the night of the killing defendant offered three separate versions of what had happened, all inconsistent. At trial there was an effort to link two unidentified middle-aged women to the crime, by means of witnesses who had seen the defendant and these two women together some time in late August or September, 1985. The jury apparently considered this hypothesis, and rejected it. No other hypothesis, either reasonable or possible, is suggested to explain the deceased's death. The only other possible hypothesis of innocence is that some unseen, violent individual slipped in and out of the house, found the gun and fatally shot the deceased two times, then left the gun on the roadside some distance from the house. In view of all the other circumstances the jury properly excluded this hypothesis of innocence as an unreasonable one. Therefore, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found beyond a reasonable doubt that defendant committed second degree murder. This assignment is without merit.
The conviction and sentence are affirmed.
AFFIRMED.